```
                                                           USDC SNY
                                                           DOCUMENT
UNITED STATES DISTRICT COURT                               ELECTRONICALLY FILED
SOUTHERN DISTRICT OF NEW YORK                              DOC #: _____
------------------------------------------------------ x   DATE FILED: May 22, 2013
TRACY PANNELL as Mother and                    :
Natural Guardian of EPIPHANY                   :
PANNELL, and TRACY PANNELL                     :
Individually,                                  :
                                               :
                       Plaintiffs,             :
                                               :
        - against -                            :          11 Civ. 7326 (PAC)
                                               :
TARGET CORPORATION                             :          OPINION & ORDER
                                               :
                       Defendant.              :
------------------------------------------------------ x
```

HONORABLE PAUL A. CROTTY, United States District Judge:

This tort case arises from injuries that Plaintiff Epiphany Pannell ("Epiphany" or "Plaintiff") sustained while shopping at a Target store. Epiphany, who was five years old at the time of the incident, claims that Target Corporation's ("Target's") negligent maintenance of a shelf caused six heavy boxes of furniture to collapse on her. (Def. Ex. A Compl. ¶ 12.) Epiphany's mother, Tracy Pannell ("Tracy"), has withdrawn her personal claim for the loss of Epiphany's services, leaving only Epiphany's claim for her own injuries, asserted by her mother on her behalf. Target presently moves for summary judgment, which Plaintiff opposes on the grounds that a jury may find liability on the theory of res ipsa loquitur.[1] Upon viewing evidence in the non-movant's favor and drawing all reasonable inferences in her favor, there are genuine

---

[1] Target states that it is only moving for partial summary judgment, specifically to dismiss any claim to the extent that it is based on allegations of brain injury, but "does not seek summary judgment as to the balance of the claimed injuries on the part of Epiphany Pannell including any orthopedic injuries." (D. Mot. at 24.) Target's objections to allegations of brain damage are noted and addressed later in the opinion. The majority of the arguments that Target marshals in support of summary judgment, however, would absolve it altogether of liability without regard to the type of injury—e.g., the lack of Target's exclusive control over the shelf and the boxes, the lack of proximate cause, and the lack of notice of the defective condition alleged. Accordingly, the Court treats Target's motion as one in support of full, not partial, summary judgment.

issues of material fact which must be submitted to a jury. None of Target's arguments support its claim for summary judgment and accordingly, Target's motion for summary judgment is DENIED.

## BACKGROUND

On May 27, 2010, Tracy Pannell took her daughter, Epiphany Pannell, shopping at the Target store located at 40 West 225th Street in the Bronx, New York. (Defs. Ex. A Compl. ¶¶ 1, 2, 6.)[2] As Plaintiff and her mother were walking down an aisle in the furniture section, they paused to examine a shelf of children's furniture. (Defs. Ex. G Tracy Pannell Dep. 34:4-12, 35:7-10, 39:23-40:1-7.) The shelf was approximately five feet high, and supported six boxes containing bookcases that weighed approximately forty five pounds each. (Id. 35:20-25, 41:10-21.) A few minutes after they entered the aisle, without warning, boxes from the shelf fell and struck Epiphany on the head. (Id. 34:24 – 35:6, 57:5-10; Pl. Ex. A Pannell Aff ¶ 2; Pl.'s Ex. C Electronic Incident Report.)[3] Aside from Tracy, there were no witnesses who saw the incident. Neither Tracy nor Epiphany touched the shelf or the boxes prior to the accident. (Id. 51:18-24.) When Epiphany was struck, Tracy called out for help and within two minutes, a Target employee appeared. (Pl. Ex. A Pannell Aff. ¶ 2.) The employee saw Epiphany sitting on the ground near

---

[2] Target argues that the Court should deem admitted the facts in Target's 56.1 statement because Plaintiff's counsel has not complied with Local Civil Rule 56.1(b). Instead of responding to each numbered paragraph of Defendant's 56.1 statement with a correspondingly numbered paragraph, Plaintiff's counsel submitted eight numbered paragraphs setting forth the Plaintiff's statement of facts. Failure to comply with this procedure means that the facts set forth in the moving party's statement "will be deemed admitted for the purposes of the motion . . . ." Local Civ. Rule 56.1(c). However, courts have broad discretion to overlook a party's failure to comply with 56.1(b) and may conduct an independent review of the record. See Holtz v. Rockefeller & Co., 258 F.3d 62, 73-74 (2d Cir. 2001). Here, despite Plaintiff's counsel's technical failures, the Court will resolve the dispute on the merits based on its own review of the record.

[3] The record is unclear as to the number of boxes that fell on Epiphany.

the collapsed boxes. (Def. Ex. H Hadabbeh Aff. ¶ 3.)[4] He noticed that although one shelf bracket was "firmly in its holder . . . the other bracket had come out somewhat from its holder, causing the shelf to lean to one side." (Id. ¶ 4.) Tracy, too, noticed immediately after Epiphany fell that the bracket was not fastened to the wall, and the shelf was slanted in the direction of the failed bracket. (Def. Ex. G Pannell Dep. 67:14-17; 76:2-7.) The bracket itself did not appear to be broken or bent. (Id. 69:6-13.) After the employee called for assistance on his walkie-talkie, he replaced the bracket into its holder. (Def. Ex. H Hadabbeh Aff. ¶ 5.) The employee contends that he had personally walked through the aisle ten to fifteen minutes prior to the accident and observed nothing out of the ordinary. (Id. ¶ 6.) The particular shelf in question, he adds, was level and seemingly secure. (Id.)

Epiphany was taken from Target to the emergency room by an ambulance. (Def. Ex. C Electronic Incident Report; Def. Ex. G Pannell Dep. 105:20-22.) At the emergency room, Epiphany complained of head and neck pain. (Pl. Ex. A Pannell Aff. ¶ 4.) After the accident, Tracy began to notice "outbursts of temper and [that Epiphany] seemed disordered at times with respect to her ability to perform relatively straight forward organizational tasks." (Id. ¶ 4.) Tracy brought her daughter to see a clinical psychiatrist. (Pl. Ex. I Mead Report.) Tracy contends that in addition to physical ailments, the accident caused her daughter brain damage and seeks to recover against Target for its alleged negligence.

I. Summary Judgment Standard

Summary judgment may be granted where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is

---

[4] Tracy notes that Epiphany was on her back, laid out on the floor when she finally came to a rest from falling. (Def. Ex. G Pannell Dep. 82:9-12.)

material if it "might affect the outcome of the suit under governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The moving party bears the initial burden of producing evidence on each material element of its claim or defense demonstrating that it is entitled to relief. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party, which "must set forth specific facts showing that there is a genuine issue for trial," wherein "a reasonable jury could return a verdict for the non-moving party." Anderson, 477 U.S. at 248. "In reviewing a summary judgment motion, [the Court] must resolve all ambiguities and draw all reasonable inferences in the non-movant's favor." Vt. Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004).

   II. Legal Standard for Res Ipsa Loquitor

Both parties agree, and the Court assumes, that New York tort law applies to this diversity action. Res ipsa loquitur ("res ipsa") permits a jury to infer negligence, based on circumstantial evidence, simply from the fact that an event happened. St. Paul Fire & Marine Ins. Co. v. City of N.Y., 907 F.2d 299, 302 (2d Cir. 1990). A plaintiff to whom a duty of care is owed may rely on the doctrine to establish a prima facie case without proving each of the elements of a traditional negligence claim. In New York, a res ipsa inference requires three elements: "(1) the event was of a kind which ordinarily does not occur in the absence of someone's negligence; (2) it was caused by an agency or instrumentality within the exclusive control of the defendant; and (3) it was not due to any voluntary action or contribution on the part of the plaintiff." Id. (citing Dermatossain v. New York City Transit Auth., 67 N.Y.2d 219, 226 (1986)).[5]

---

[5] Target concedes that it owed Pannell a duty of reasonable care. Pannell was a business invitee at the time that the accident occurred.

4

At the summary judgment phase, "the court's role is to determine whether there is sufficient evidence from which a jury reasonably could find that plaintiffs have proved the elements necessary for the application of the doctrine." Lomax-Bianco v. Marriott Int'l, 1998 U.S. Dist. LEXIS 8093, at *4 (S.D.N.Y. 1998).

   III. Application of Res Ipsa to This Case

As to the first element, Target concedes that heavy boxes do not ordinarily fall from shelves onto infant children absent negligence. The facts here are just like the infamous barrel of flour that rolled from a merchant's second-story window one hundred and fifty years ago in Byrne v. Boadle, 159 Eng. Rep. 299 (1863). Shelves of sufficient strength, durability, and suitability do not usually collapse unless they are insecurely fastened, overburdened, or otherwise disturbed. There is more than sufficient factual basis for a jury to infer that the accident occurred because someone was at fault.

Similarly, the third element is not at issue. There is no evidence in the record that Epiphany contributed in any way to the injury she suffered. Target does not dispute that neither Tracy nor Epiphany touched the shelves or boxes prior to their collapse. (Def. Ex. G Pannell Dep. 42:4-9.)

Target's chief argument raises the question whether Target had exclusive control over the instrument that caused Epiphany's injury.[6] Target contends that customers are encouraged to freely peruse the aisles, take merchandise from shelves, examine it and replace it. (Dudley Aff. ¶ 2.) According to Target, neither the collapsed shelf nor the boxes on the shelf were within Target's exclusive control. Its argument would permit Target to insulate itself from its

---

[6] Plaintiff contends that the issue of exclusive control is one of law that should be resolved in Plaintiff's favor, but has not cross-moved for summary judgment on that issue, or any other part of her claim. (P. Opp. at 4.)

responsibilities as a shop keeper and transfer responsibilities to unknown third parties.  This may ultimately be the case, but it does not support a motion for summary judgment.

In New York, courts do not rigidly apply the concept of exclusive control, but instead observe that it should be "subordinated to its general purpose, that of indicating that it *probably* was the defendant's negligence which caused the accident."  Williams v. KFC Nat'l Mgmt. Co., 391 F.3d 411, 422 n.2 (2d Cir. 2004) (Calabresi, J., concurring) (quoting Corcoran v. Banner Super Mkt., Inc., 19 N.Y.2d 425, 432 (N.Y. 1967) (emphasis in original)).

The public's access to an injury-causing instrumentality will not categorically preclude the application of res ipsa.  The defendant's exclusive control depends on the circumstances of each case.  See Stone v. Courtyard Mgmt. Corp., 353 F.3d 155, 158 (2d Cir. 2003).  In the context of a retail store, some courts have held that store defendants do not have exclusive control over their merchandise.  E.g., Janetos v. Home Depot U.S.A., Inc., 2012 U.S. Dist. LEXIS 130964, at *37 (E.D.N.Y. Sept. 13, 2012) (front doors at Home Depot); Ascher v. Target Corp., 522 F. Supp. 2d 452, 457 (E.D.N.Y. Oct. 16, 2007) (a saute pot); Ruggiero v. Waldbaums Supermarkets, Inc., 661 N.Y.S.2d 37, 39 (N.Y. App. Div. 2d Dep't 1997) (cans of juice); Fleischer v. Melmarkets, Inc., 571 N.Y.S.2d 509, 510 (N.Y. App. Div. 2d Dep't 1991) (ketchup bottles).  Nonetheless, courts have found that the exclusivity element is met when customers do not have reasonable access to the goods or are not expected to handle it.  E.g., Durso v. Wal-Mart Stores, Inc., 705 N.Y.S.2d 157, 158 (N.Y. App. Div. 4th Dep't 2000) (boxes stacked four feet high for restocking only); Ciciarelli v. Ames Dep't Stores, Inc., 557 N.Y.S.2d 787, 788 (N.Y. App. Div. 4th Dep't 1990) (TV trays part of display and not a sale item).

Contrary to Target's contention, the more appropriate "instrumentality" is the allegedly defective prong-and-hole assembly or the shelf itself.  See Pavon v. Rudin, 679 N.Y.S.2d 27, 30

(N.Y. App. Div. 1st Dep't 1998) ("The appropriate target of inquiry is whether the broken component itself was generally handled by the public, not whether the public used the larger object to which the defective piece was attached.").[7] The facts permit the inference that customers did not typically handle the interlocking mechanism affixing the prongs of the shelf to the wall. The mechanism is at the back of the shelf, and this particular furniture shelf "is recessed from the base deck within the aisle" and high off the ground. (Pl. Dec. Exs. E, F, G, Ex. I DeLeon Aff. ¶ 4.) Customers seeking to retrieve a box of merchandise would have no reason to jostle, forcefully tug on or otherwise disturb the shelf supporting it.

Target speculates that the customers routinely handled this particular merchandise atop the shelf. The six boxes that fell were approximately three feet tall by a foot and a half wide, weighed forty-five pounds each, and were placed on a shelf that was approximately five feet high. (Pl. Ex. B Pannell Dep. 35:20-25, 40:11-16, 41:10-21.)[8] Whether customers in need of reaching unwieldy boxes on high shelves would likely call for the assistance of employees or would do it themselves is a factual question which precludes summary judgment. The record as it stands now shows that Target regularly handled both the merchandise and the shelves in the furniture department, for example, during the course of nightly stocking and re-stocking. (Def. Ex. J Vallade Aff. ¶¶ 3-5.) Indeed, Target re-stocked the particular shelf in question "very recently prior to the plaintiff's accident" based on the number of the boxes that fell that day. (Id. ¶ 5.) There is no present basis—other than speculation—that anyone other than Target caused

---

[7] In Pavon, the court held that where a door apparently became dislodged from the hinge attaching it to the door frame, the appropriate "instrumentality" was the dysfunctional hinge, not the falling door. Id.

[8] There is a minor discrepancy in the record as to the precise height of the shelf. Target employee Hadabbeh states that the shelf was four feet high. (Ex. H Hadabbeh Aff. ¶ 4.) The pediatrician's notes from Plaintiff's visit to her office the next day report that the shelf was six feet high. (Pl. Ex. H.)

the injury—no facts suggest that customers were the proximate cause of the shelf's collapse.[9] Plaintiff does not have the burden to altogether exclude the possibility that a customer could have disturbed the structural integrity of the shelf or otherwise caused the boxes to fall, but to demonstrate that the "greater probability of responsibility . . . lies at the defendant's door." Stone, 353 F.3d at 158. Plaintiff here has done at least that much.

Target's other objections are equally without merit. Target argues that it took due care: (a) an employee inspected the furniture aisle approximately ten to fifteen minutes before the accident, and did not discover any shelf defects (Def. Ex. H Hadabbeh Aff ¶ 6); and (b) its personnel check the stability of shelves during nightly stockings. (Def. Exs. I Deleon Aff. ¶ 5, Vallade Aff. ¶¶ 3, 5.) These are factual arguments which do not support a grant of summary judgment in Target's favor.

Target contends that Plaintiff must explain exactly what happened to her, and argues that her failure to do so is a failure of proof on causation. Target claims that Plaintiff cannot prove "what caused what to happen first": the collapse of the shelf or the tumbling of the boxes. (D. Rep. at 8; Def.'s 56.1 ¶ 6.) Why a five year old child and her mother need explain this chicken and egg situation is unexplained. They know only that while walking down the aisle in a Target store, Epiphany was hit by boxes which fell from a shelf. This is precisely why we have res ipsa—to address situations in which plaintiffs cannot explain the exact cause of the accident, but

---

[9] Target employee Deleon's testimony about the effort that it would take to dislodge a shelf contradicts Target's suggestion that a customer would be able to disturb it simply by removing a box of merchandise. (Ex. I Deleon Aff. ¶ 4.) On the only other occasion in the four years preceding the incident in which a shelf became dislodged in that aisle, it only fell loose when a cart "forcefully and severely struck" an adjacent shelf. (Id.) Applying such force to a shelf, however, is not incidental to a typical shopping experience and would not tend to increase in likelihood with greater customer traffic. Thus, although Target emphasizes customer access to its merchandise, this factor must be considered in context. In any event, Tracy testified that there were no customers in the aisle when they entered. (Def. Ex. G Pannell Dep. 61:3-4.)

the circumstances are such that the defendant's negligence can be inferred. See Morejon v. Rais Constr. Co., 7 N.Y.3d 203, 205 (N.Y. 2006) ("Occasionally, however, a plaintiff . . . is not in a position to prove directly what actually happened or that a specific act of the defendant was negligent. [R]es ipsa . . . allows a jury to . . . infer that the defendant was negligent in some unspecified way.")

      Target's liability does not depend on Plaintiff's ability to detail the mechanics of a shelf which she likely knows nothing about. Target had the responsibility for checking the stability of shelves that were located in its store, not Plaintiff, who was a customer and business invitee. Surely, as between Plaintiff and Target, Target has a "greater capacity . . . to explain what actually happened." Williams v. Utica College of Syracuse Univ., 453 F.3d 112, 121 (2d Cir. 2006).[10] Tracy Pannell testified that after the accident, she observed "the bracket out of the hole and wobbling" and an employee who responded to the accident replaced the loose bracket. (Def. Ex. G Pannell Dep. 66:18-22; Pl.'s Ex. B Pannell Dep. 73:19 – 74:9; Def. Ex. H Hadabbeh Aff. ¶ 4.) Ordinary experience would suggest that the boxes fell when an unsecured shelf gave way. To the extent that Target posits an alternative theory that insulates it from liability, it may proffer facts and make its case for a different inference before a jury.

      With respect to damages, Target contends that Epiphany never lost consciousness, did not undergo any diagnostic tests, and cannot show physical evidence of bruising or swelling in the brain. Target also attempts to impeach Plaintiff's expert witness report—a psychological evaluation—as lacking a sound basis in medical proof. These evidentiary arguments have

---

[10] This is one of three factors upon which courts have relied to guide the appropriate application of res ipsa. The other two are, first that the strength of the circumstantial evidence, defined as knowledge from common experience that if "A" is present, then "B" is likely to have occurred. The second factor is that a belief that an erroneous finding of non-liability is more harmful than an erroneous finding of liability. Id.

nothing to do with summary judgment. These are triable issues of fact concerning brain damage and the extent of any other bodily injuries. (Pl. Ex. A Pannell Aff ¶ 5, Pl. Ex. K Lidsky Report.)

## CONCLUSION

For the reasons discussed, Target's motion for summary judgment is DENIED. The Clerk of Court is directed to terminate the motion at docket number 18.

Dated: New York, New York
       May 22, 2013

SO ORDERED

*[signature]*

PAUL A. CROTTY
United States District Judge